IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FOXXXY LADYZ ADULT WORLD, INC., and DIRT CHEAP, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 13–cv–0482–MJR–DGW ) |
| VILLAGE OF DIX, ILL., | ) ) |
| Defendant. | ) |

# MEMORANDUM & ORDER

**REAGAN, District Judge:**

This case, in which Plaintiffs challenge the constitutionality of three local ordinances adopted by Defendant in 2010, comes before the Court on Defendant's motion to dismiss. For the reasons articulated below, the motion (**Doc. 9**) is **GRANTED**.

### BACKGROUND

The Village of Dix ("Dix"), a small, "dry" municipality located in this judicial district, adopted three ordinances in mid-December 2010. According to the Complaint (Doc. 2), one ordinance prohibits the possession of any open container containing alcohol, the second prohibits any person from appearing nude in a public place, and the third prohibits businesses from permitting the possession of alcohol on their premises.[1]

In October 2010, Plaintiff Dirt Cheap, Inc. ("Dirt Cheap") purchased real estate in Dix, and opened "Club 57" (presumably named for Interstate 57, which runs through Dix). Approximately two years later, newly-incorporated Plaintiff Foxxxy Ladyz Adult World, Inc. ("Foxxxy Ladyz") took

---

[1] The Dix ordinances are appended to Plaintiffs' Complaint, so the Court may consider them at the motion to dismiss stage. **Fed. R. Civ. P. 10(c);** *Burke v. 401 N. Wabash Venture, LLC*, **714 F.3d 501, 505 (7th Cir. 2013);** *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).

1

over the Club 57 location. Foxxxy Ladyz pays rent to Dirt Cheap pursuant to an oral lease, and operates on essentially the same model as did Club 57, by allowing its customers to bring their own liquor onto the premises[2] and (perhaps unsurprisingly, given the moniker) presenting "erotic entertainment." (Doc. 2, 2–4).

Dix passed three ordinances in 2010, each banning certain behavior throughout the entire village:

1. *Ordinance 2010-04: Open Container Ban*

    WHEREAS, the Village of Dix, situated in Rome Township, Jefferson County, Illinois is a Village where the sale at retail of alcoholic liquor is prohibited by law as each of the Village of Dix and Rome Township are "dry" as that term is used and understood under Illinois Statutes; and

    WHEREAS, the Board of Trustees of the Village of Dix believes that the prohibition on the retail sale and public consumption of alcoholic liquor within the Corporate Limits of the Village of Dix is in the public interest to maintain social order, health, welfare, and safety of citizens; and

    WHEREAS, the Board of Trustees desires to prohibit the possession of open alcohol in public places and to prohibit the consumption of alcoholic liquor in public places; and

    WHEREAS, the Board of Trustees desires to preserve the "dry" status of the Village of Dix to the fullest extent permitted by law.

    NOW, THEREFORE, BE IT ORDAINED by the Board of Trustees of the Village of Dix, Illinois, as follows:

    No person shall possess any open container of alcoholic liquor or consume alcoholic liquor or transport or carry any alcoholic liquor except on the original package with the seal unbroken upon any public property or public place as herein defined within the corporate limits of the Village of Dix. * * * "Public property" or "Public Place" means any public street, alley, sidewalk, or public way, or any property owned by the United States, the State of Illinois, or any other State or Municipality, or other political subdivision or agency thereof, or any property, including privately owned, which is open to or held out for use by the public or is otherwise available to the public. This Ordinance shall not be construed so as to violate any [superseding] state or federal law.

---

[2] It is undisputed that Foxxxy Ladyz does not sell alcohol.

Any person who violates or refuses to comply with the provisions of this Ordinance shall upon conviction thereof be fined not less than $100.00 nor more than $750.00 for each violation; each instance of public possession and consumption shall be a separate punishable offense. In addition to any other fine authorized by law, any person who violates or refuses to comply with this Ordinance shall be subject to an action for an injunction to eliminate or prevent violation of this Ordinance.

2. *Ordinance 2010-05: Public Nudity Ban*

WHEREAS, Ordinance Number 9, Section 7 enacted on August 18, 1930 presently provides "No person shall appear in any public place in a state of nudity, nor in a dress not belonging to his or her sex, or any indecent or lewd dress, or make any indecent exposure of his or her person, nor shall commit any indecent exposure of his or her person, nor shall commit any indecent or lewd act"; and

WHEREAS, the Board of Trustees of the Village of Dix desires to update the above cited Ordinance to use language which has been approved by the Courts as consistent with the Illinois and United States Constitution; and

WHEREAS, it is in the public interest to maintain social order, health, welfare, and safety of citizens; and

WHEREAS, the Board of Trustees desires to continue the prohibition on public nudity within the Village of Dix.

NOW, THEREFORE, BE IT ORDAINED * * * that Section 7 of Ordinance Number 9 described above is hereby repealed and replaced by the following Ordinance:

An Ordinance Prohibiting Public Nudity

No person shall knowingly or intentionally appear nude or in a state of nudity in a public place.

"Public place" means any location frequented by the public or where the public is present or likely to be present or any location where a person may reasonably be expected to be observed by members of the public or any place to which the public has a right to go or is invited.

"Nude" or "State of Nudity" means the showing of the human male or female genitals, pubic area, vulva, anus, or anal cleft or cleavage with less [than] a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple

and areola, or the showing of the covered male genitals in a discernibly turgid state.[3]

Any person who violates or refuses to comply with the provisions of this Ordinance shall upon conviction thereof be fined not less than $100.00 nor more than $750.00 for each violation; each instance of public nudity shall be a separate punishable offense. In addition to any fine or other penalty authorized by law, any person who violates or refuses to comply with this Ordinance shall be subject to an action for an injunction to eliminate or prevent violation of this Ordinance.
* * *

3. *Ordinance 2010-06: Ban on Liquor Possession in Public Accommodations*

WHEREAS, the Village of Dix, situated in Rome Township, Jefferson County, Illinois is a Village where the sale at retail of alcoholic liquor is prohibited by law as each of the Village of Dix and Rome Township are "dry" as that term is used and understood under Illinois Statutes; and

WHEREAS, the Board of Trustees of the Village of Dix believes that the prohibition on the retail sale and public consumption of alcoholic liquor within the Corporate Limits of the Village of Dix is in the public interest to maintain social order, health, welfare, and safety of citizens; and

WHEREAS, the Board of Trustees desires to preserve the "dry" status of the Village of Dix to the fullest extent permitted by law; and

WHEREAS, the Board of Trustees desires to prohibit the possession of alcoholic liquor within businesses operating as a public accommodation; and

WHEREAS, the Board of Trustees believes that prohibiting possession of alcoholic liquor within businesses operating as a public accommodation is conducive to prohibiting the consumption of alcoholic liquor in public places and is conducive in preserving the benefits to the citizens of Dix in being a "dry" Village.

* * *

No individual, partnership, corporation or other person operating as a public accommodation shall permit the possession of alcoholic liquor * * * on its premises. No person shall possess alcoholic liquor upon the premises of a public accommodation. For purpose of this subsection "Public Accommodation" means a refreshment, entertainment or recreation facility of any kind whose goods, services, facilities, privileges or advantages are extended, offered, sold or otherwise made available to the public. This Ordinance specifically, but without limitation, prohibits all establishments generically known or referred to as "BYOB" * * * or "Brown Bag"

---

[3] Dix points out—with no rebuttal from Foxxxy Ladyz—that any citizen of Dix (or, for Foxxxy Ladyz's purposes, any of its performers) can comport with Ordinance 2010–05 by putting on pasties and a G-string.

establishments or bottle clubs or set up establishments. Each … person who possesses alcoholic liquor and the person in control of the public accommodation who knowingly permits the possession of alcoholic liquor upon the premises of a public accommodation shall be in violation of this Ordinance. * * *

Plaintiffs' lawsuit targets all three ordinances. Broadly, Foxxxy Ladyz and Dirt Cheap argue that Dix's public nudity ban offends the First Amendment (and the Illinois constitution's free speech protections), and that Dix is simply without the governmental power to pass the alcohol restrictions in Ordinance 2010–04 and Ordinance 2010–06.

Defendant's motion to dismiss is ripe: Foxxxy Ladyz filed a brief in response on September 9, 2013, and Dix replied on October 11, 2013. Upon the retirement of the Honorable William D. Stiehl, the case was randomly reassigned to the undersigned district judge. After a thorough review of the record and controlling legal precedent, the undersigned rules as follows.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)6) governs motions to dismiss for failure to state a claim. In 2007 and 2009, respectively, the United States Supreme Court handed down two decisions delineating the district court's proper role on a Rule 12(b)(6) motion: *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 663-664 (2009). In deciding a 12(b)(6) motion, the court's task is to determine whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." **Khorrami v. Rolince, 539 F.3d 782, 788 (7th Cir. 2008) (quoting *Twombly,* 550 U.S. at 570). Accord Burke v. 401 N. Wabash Venture, LLC, 714 F.3d 501, 504 (7th Cir. 2013).**

A complaint need not contain detailed factual allegations, **Scott v. Chuhak & Tecson, P.C., 725 F.3d 772, 782 (7th Cir. 2013),** but it must "go beyond mere labels and conclusions" and contain "enough to raise a right to relief above the speculative level," **G&S Holdings, LLC v. Cont'l Cas. Co., 697 F.3d 534, 537–38 (7th Cir. 2012).** Courts "must still approach motions under Rule 12(b)(6) by 'construing the complaint in the light most favorable to the plaintiff, accepting as

5

true all well-pleaded facts alleged, and drawing all possible inferences in her favor.'" *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), *cert. denied,* 558 U.S. 1148 (2010) (quoting *Tamayo v. Blagoyevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

The United States Court of Appeals for the Seventh Circuit has explained that *Iqbal* clarified *Twombly*'s two working principles:

> First, although the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion. Accordingly, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." Second, the plausibility standard calls for a "context-specific" inquiry that requires the court "to draw on its judicial experience and common sense."

*McReynolds v. Merrill Lynch & Co., Inc.,* 695 F.3d 873, 885 (7th Cir. 2012) (internal citations omitted).

So this Court reviews Plaintiffs' complaint, taking as true all well-pled factual allegations. After excising any allegations not accepted as true (legal conclusions), the Court must decide whether the remaining factual allegations plausibly suggest that Plaintiffs are entitled to relief. *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011). A Rule 12(b)(6) dismissal motion "must be decided solely on the face of the complaint and any attachments that accompanied its filing." *Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010) (citing FED. R. CIV. P. 10(c) and *Segal v. Geisha NYC LLC,* 517 F.3d 501, 504–05 (7th Cir. 2008)).

ANALYSIS

1. *Ban on Public Nudity*

In pertinent part, the First Amendment provides that "Congress shall make no law … abridging the freedom of speech." **U.S. Const. amend. I.** The Free Speech Clause has been incorporated so as to apply to the states (and municipalities) via the Fourteenth Amendment's Due Process Clause. *Ben's Bar, Inc. v. Vill. of Somerset*, 316 F.3d 702, 707 (7th Cir. 2003) (citing

*Gitlow v. New York*, 268 U.S. 652, 666 (1925)).[4] Nude dancing, though it falls "only within the outer ambit" of the First Amendment, nevertheless receives First Amendment protection as expressive conduct. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991) ("Nude dancing of the kind sought to be performed here is expressive conduct within the outer perimiters of the First Amendment, though we view it as only marginally so.").

When an ordinance is content-neutral—that is, when it targets municipality-wide conduct rather than sex-oriented businesses generally or the narrower "expressive" conduct inherent in a dancer's performance—it can nevertheless encumber specific instances of expressive conduct. *Schultz v. City of Cumberland*, 228 F.3d 831, 841 (7th Cir. 2000) (explaining *United States v. O'Brien*, 391 U.S. 367 (1968), the seminal "intermediate scrutiny" case where a restriction on burning draft cards was upheld). A general prohibition on all public nudity therefore receives intermediate scrutiny: the regulation "is sufficiently justified if it [1] is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Barnes*, 501 U.S. at 567 (articulating the "*O'Brien*" test). *See also Joelner v. Vill. of Washington Park*, 508 F.3d 427, 431 (7th Cir. 2007); *Ben's Bar*, 316 F.3d at 722.

Ordinance 2010–05 succinctly provides: "No person shall knowingly or intentionally appear nude or in a state of nudity in a public place." Dix's nudity ban is village-wide and content-neutral, and therefore subject to intermediate scrutiny.

---

[4] While Plaintiffs' case also invokes the Illinois Constitution, the First Amendment analysis herein suffices to address both Plaintiffs' Illinois and federal rights: the "Constitution of the State of Illinois protects an individual's right to free speech only to the same extent that such speech is protected by the Constitution of the United States." *Trejo v. Shoben*, 319 F.3d 878, 884 n.2 (7th Cir. 2003).

Under that lens, courts have upheld bans like the one in Dix, where (it is undisputed) performers can conform to the ordinance by covering up their "genitals, pubic area, vulva, anus, or anal cleft or cleavage" with a G-string, and "any part of the nipple and areola" with pasties. On two separate occasions, the Supreme Court has held that requiring (otherwise) nude dancers to wear pasties and G-strings does not violate the First Amendment. *Ben's Bar*, 316 F.3d at 708 n.7 (citing *Pap's A.M.*, 529 U.S. at 301 (plurality opinion); *id.* at 307–10 (Scalia, J., concurring); *Barnes*, 501 U.S. at 571–72; *id.* at 582 (Souter, J., concurring)). Applying intermediate scrutiny, the Court upheld the "modest requirement" that dancers wear pasties and G-strings because that requirement served "a substantial government interest in protecting order and morality," *Barnes*, 501 U.S at 569, and was the "bare minimum necessary to achieve the State's purpose," *id.*

Though *Barnes* was a plurality decision, Justice Souter's concurrence (as the narrowest opinion joining the Court's judgment) controlled. *Schultz*, 228 F.3d at 842 n.2 (citing *Marks v. United States*, 430 U.S. 188, 193 (1977)). There, Justice Souter applied the *O'Brien* intermediate scrutiny test, and rested his concurrence not on the possible sufficiency of society's moral views as justification for the ordinance, but on the state's substantial interest in combating the secondary effects of adult entertainment establishments. *Barnes*, 501 U.S. at 583 (Souter, J., concurring) ("it is clear that the prevention of such evils [i.e. prostitution, sexual assault, and other criminal activity] falls within the constitutional power of the State" (the first *O'Brien* prong), and Supreme Court precedent has established that nudity bans furthers that substantial state interest (the second *O'Brien* prong)). Continuing, Justice Souter held that, since the interest in banning public nudity resulted from a correlation with other evils (rather than a relationship "between the other evils and the expressive conduct of the dancing"), the state's interest was unrelated to the suppression of free expression (the third *O'Brien* prong), and finally that the dancer's "remaining capacity and opportunity to express the erotic message" (i.e. doing the same

8

dance in a G-string and pasties) made the restriction no greater than essential to further the government interest (*O'Brien's* fourth requirement). *Id.* **at 585–87.**

In *Pap's A.M.*, the controlling plurality opinion adopted Judge Souter's *Barnes* concurrence as it pertained to the secondary effects of nude dancing. ***Ben's Bar*, 316 F.3d at 718–19 (citing *Pap's A.M.*, 529 U.S. at 296) ("The asserted interests of regulating conduct through a public nudity ban and of combating the harmful secondary effects associated with nude dancing [i.e. the increased crime generated by such establishments] are undeniably important.").** The plurality, like Justice Souter in *Barnes*, also found the G-string / pasty requirement a *de minimus* impact on free speech: "the restriction leaves ample capacity to convey the dancer's erotic message." ***Pap's A.M.*, 529 U.S. at 301.**

Here, Dix's ban on public nudity survives intermediate scrutiny. As in *Barnes*, where the prevention of prostitution, sexual assault, and other criminal activity was held to be within the constitutional power of the state, Dix's attempt to "maintain social order, health, welfare and safety of citizens" is clearly within its constitutional power. (In any event, Ordinance 2010–05 also serves another important purpose: to "update" a 1930 nudity ban so as "to use language which has been approved by the Courts"). The first *O'Brien* prong is satisfied. It is well-established that "nudity bans further that substantial state interest," ***Barnes*, 501 U.S. at 583 (Souter, J., concurring)**— fulfilling the second *O'Brien* prong. Dix's interests in banning public nudity (updating an antiquated ordinance and providing for social order, health, welfare and safety) are unrelated to the content of performers' erotic expressions (the third *O'Brien* prong). And requiring a dancer to wear pasties and a G-string is a *de minimus* restriction on her (or his—though the logistics would be different: Ordinance 2010–05 would require covering "the male genitals in a discernibly turgid state") ability to

9

express the free speech elements of a performance (the fourth *O'Brien* prong, **see Pap's A.M.**, **529 U.S. at 301**).[5]

The precedents advanced by Plaintiffs simply do not square with the instant case. *Schultz v. Cumberland*, 228 F.3d 831 (7th Cir. 2000), is offered to support the idea that nude dancing "may not be prohibited by any governmental entity." In light of two Supreme Court cases where G-string and pasty requirements were held valid, that assertion is dramatic in its overbreadth, but in any case *Schultz* is distinguishable. There the ordinance, on its face, targeted erotic expression, **Schultz, 228 F.3d at 842–43;** here, the Dix ordinance is a content-neutral prohibition on a general class of conduct. *City of Los Angeles v. Alameda Books*, 535 U.S. 425 (2002), and *Annex Books, Inc. v. City of Indianapolis*, 581 F.3d 460 (7th Cir. 2009) are put forward for the idea that Dix must provide evidence or studies in support of the ordinance, but those cases involved ordinances that specifically targeted adult businesses, and Dix has enacted a general village-wide ban on nudity.

Most puzzlingly, Plaintiffs invoke *Miller v. Civil City of South Bend*, 904 F.2d 1081 (7th Cir. 1990), as an example of a public indecency statute "held unconstitutional because it restricts nude dancing, which is protected by the First Amendment." *Miller*, though, went up to the Supreme Court—as *Barnes v. Glen Theatre*—and as discussed above, was reversed when the ordinance was upheld. **See Barnes, 501 U.S. at 587 (Souter, J., concurring) ("Pasties and G-string moderate [a performer's] expression to some degree, to be sure, but only to a degree. Dropping the**

---

[5] Plaintiffs' argument relies heavily upon the idea that Dix needed a "predicate"—some study, factual finding, or other evidence—in order to justify that its nudity ban would combat the secondary effects of nude dancing. The *Pap's A.M.* plurality made clear that relying on the evidentiary foundation of harmful secondary effects set forth in previous caselaw provides an adequate rationale for passing a nudity ban. **Pap's A.M., 529 U.S. at 296–97.** Such reliance is particularly appropriate here, where one expressed purpose of Ordinance 2010–05 is "to use language which has been approved by the Courts as consistent with the Illinois and United States Constitution" in order to "continue the prohibition on public nudity in the Village of Dix." **Accord Ben's Bar, 316 F.3d at 721 (explaining the controlling holding in Alameda Books, 535 U.S. at 450 (Kennedy, J., concurring) ("a municipality's rationale must be premised on the theory that it may reduce the costs of secondary effects without substantially reducing speech.") (emphasis in Ben's Bar).** In other words, one of Dix's rationale for the ordinance necessarily implies an awareness of First Amendment caselaw that traces the harmful secondary effects of nude dancing. Insofar as Plaintiffs want to add some evidentiary standard (essentially another prong) to the *O'Brien* test, the caselaw does not support their position.

final stitch is prohibited, but the limitation is minor when measured against the dancer's remaining capacity and opportunity to express the erotic message.").[6]

In short, the free speech repercussions of the ordinance are negligible. *See Schultz*, 228 F.3d 831 (explaining *Pap's A.M.* and *Barnes*: "[L]imiting erotic dancing to semi-nudity represents a *de minimus* restriction that does not unconstitutionally abridge expression"). Dix's village-wide ban on public nudity passes intermediate scrutiny. Insofar as it is premised on the constitutionality of Ordinance 2010–05, Dix's motion to dismiss will be granted.

## 2. Alcohol Regulations

Plaintiffs' challenge to Dix's alcohol regulations is premised on the notion that Dix "has not been granted the power to prevent the consumption of alcohol in public places." (Doc. 2, 6). Dix counters that it has the power to regulate alcohol sales and consumption via Illinois' Liquor Control Act of 1934, 235 ILCS 5/4–1, and that the alcohol ordinances do not violate the Illinois Constitution. Plaintiffs, in turn, respond that the ordinances are invalid because Dix failed to provide a "predicate" (i.e. evidence supporting the need) for the ordinances, that a referendum is required for such ordinances to pass, and that municipalities, generally, cannot prohibit the issuance of alcohol licenses.

Generally, states have "very broad power" over the sale of alcoholic beverages. *Club Misty, Inc. v. Laski*, 208 F.3d 615, 619 (7th Cir. 2000). *See id.* ("Illinois could if it wanted forbid [sale of alcoholic beverages] altogether" under the Twenty-First Amendment).[7] A municipality's regulation of alcohol sales and consumption in inappropriate locations is "clearly

---

[6] Plaintiffs also invoke *D.C. v. City of St. Louis*, 795 F.2d 652 (8th Cir. 1986), for the proposition that Dix's "prohibition on indecent or lewd dress is invalid." That argument is frivolous: the plain language of Ordinance 2010–05 clearly indicates that Dix, in attempting to conform with modern constitutional norms, *repealed* its 1930 ordinance (which contained the "indecent or lewd dress" language and would probably be held constitutional today) and *replaced* that ordinance with the blanket ban on nudity in public places.

[7] But see *Arnold's Wines, Inc. v. Boyle*, 571 F.3d 185, 192–201 (Calabresi, J., concurring) (noting that courts initially construed the Twenty-First Amendment as removing alcohol from Commerce Clause and Dormant Commerce Clause considerations, but tracing the Supreme Court's "vector" toward prohibiting economically discriminatory state regulations regarding alcohol).

11

within its general police powers." *Ben's Bar, Inc. v. Vill. of Somerset*, **316 F.3d 702, 722 (7th Cir. 2003)**. In Illinois, regulation of the manufacture, sale, and distribution of alcohol is effectuated by the Liquor Control Act of 1934, 235 ILCS 5/1-1, *et seq.*

The purpose of that act is "to protect the health, safety, and welfare of the citizens of Illinois by fostering temperance in the consumption of alcoholic beverages and by promoting sound and careful control and regulation of alcohol manufacture, sale, and distribution." *Vino Fino Liquors, Inc. v. License Appeal Comm'n of City of Chi.*, **914 N.E.2d 724, 730–31 (Ill. App. Ct. 2009) (quoting 235 ILCS 5/1–2).** "There is no right to sell alcoholic beverages; the privilege of doing so is always subject to governmental control." *Id.* **(citing** *Schreiber v. Ill. Liquor Control Comm'n*, **145 N.E.50, 52 (Ill. App. Ct. 1957)).**

Plaintiff's narrow arguments are non-starters. The precedent requiring evidence "reasonably believed to be relevant" in support of a municipal ordinance is limited to First Amendment cases, and the First Amendment does not speak to alcohol consumption.[8] Nor does it give a right to a bar, its patrons, or its dancers "to have alcohol available during the presentation of nude or semi-nude dancing." *Ben's Bar*, **316 F.3d at 726 (citing** *Gary v. City of Warner Robins, Georgia*, **311 F.3d 1334, 1340 (11th Cir. 2002); and** *Sammy's of Mobile, Ltd. v. City of Mobile*, **140 F.3d 993, 999 (11th Cir. 1998) ("we are unaware of any constitutional right to drink while watching nude dancing.")).** Since no fundamental right is at issue, the ordinance must only pass a rational-basis test, *see Markadonatos v. Vill. of Woodridge*, **739 F.3d 984, 991–92 (7th Cir. 2014)**, and a village-wide alcohol ban is related to legitimate health and safety concerns, *see F.C.C. v. Beach Commc'ns, Inc.*, **508 U.S. 307, 315 (1993) ("[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical**

---

[8] In any event, as discussed above, the standard—in a case that specifically targeted adult businesses—is that a municipality's rationale must be premised on the theory that it may reduce the costs of secondary effects without substantially reducing speech—not premised on "evidence," as Plaintiffs argue. *Ben's Bar*, **316 F.3d at 721 (citing Justice Kennedy's controlling concurrence from** *Alameda Books*, **535 U.S. at 450).**

12

**data.").** It would be a particularly egregious overstep of judicial authority for the Court to require Dix—a historically "dry" village—to gin up evidence to justify its continued "dry" status.

Nor does Dix's alcohol ban offend due process. While an Illinois liquor license is constitutional property for the purposes of federal due process, *Club Misty*, **208 F.3d at 619**, the Seventh Circuit has held due process is not offended where a district takes away *all* licenses by going "dry," see id. **at 620–21;** *Philly's v. Byrne*, **732 F.2d 87, 92 (7th Cir. 1984).** And this is not a case where Foxxxy Ladyz is *losing* a liquor license—it is uncontroverted that Dix has never granted such licenses. The very issue came before Illinois' appellate court last year, and the court decided:

> the Board of Trustees of the municipality retains discretion to determine by ordinance or resolution the number, kind, and clarification of liquor licenses. The Board of Trustees of the Village of Dix has used this discretion to determine that it would not create or issue *any* licenses to sell alcoholic beverages within the Village. Nothing in the Act … makes the creation or issuance of liquor licenses mandatory.

*Davis v. Vill. of Dix*, **No. 5-12-0460, 2013 WL 3325169, at \*3 (Ill. App. Ct. June 26, 2013) (citing** *Hall v. City of Kewanee*, **39 N.E.2d 1009, 1011 (Ill. 1942) ("the provisions of the Liquor Control [A]ct are permissive only…There is no mandatory language requiring the city to pass any such acts except at its own discretion.")).**

Plaintiffs' broad argument—that Dix has not been granted the power to prevent the consumption of alcohol in public places—is meritless. Plaintiff is correct that Illinois municipalities' power to regulate alcohol licensing and sales is limited by the Liquor Control Act, but Illinois courts have allowed for the regulation of *conduct* insofar at it does not interfere with the Act's licensing scheme. *Cheetah Enterprises, Inc. v. Cnty. of Lake*, **317 N.E.2d 129, 133 (Ill. App. Ct. 1974).** As discussed above, Dix has no licensing scheme, and regulating alcohol possession and consumption is clearly within a municipality's powers. *Ben's Bar, Inc.* **316 F.3d at 722.** Dix's historical "dry" status removes whatever doubt is left. Plaintiffs, relying on 235 ILCS 5/9–2, argue a

13

municipality like Dix can only prohibit alcohol by general referendum. But that provision covers the requirements for "wet" municipalities going dry. A different provision allows "dry" municipalities to stay "dry" unless a general referendum to the contrary passes. **235 ILCS 5/9–10**. *Accord Henderson v. Graham*, **521 N.E.2d 143, 144 (Ill. App. Ct. 1988) ("It would be somewhat redundant to ask if the sale of alcoholic liquor 'shall' be prohibited if, in fact, it already is.").**[9]

Dix acted within constitutional bounds when it passed Ordinance 2010–04 and Ordinance 2010–06. Insofar as it is premised on the constitutionality of those ordinances, Dix's motion to dismiss will be granted.

## CONCLUSION

The three challenged ordinances pass muster under both the United States and Illinois Constitutions. *See Ben's Bar*, **316 F.3d at 708 ("In the absence of alcohol, [the plaintiff-establishment's] dancers are free to express themselves all the way down to their pasties and G-strings.").** Defendant's Motion to Dismiss (**Doc. 9)** is **GRANTED**, and Plaintiff's Complaint is **DISMISSED with prejudice**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and to **CLOSE** this case.

**IT IS SO ORDERED.**

DATE: March 12, 2014                    s/ *Michael J. Reagan*
                                        **MICHAEL J. REAGAN**
                                        United States District Judge

---

[9] Plaintiffs do not allege that Dix has ever been anything but a "dry" village, and only illumination in the pleadings and accompanying attachments are the prefaces to Ordinance 2010-04 and 2010-06, in which it is noted that Dix is "dry."